## J. F. MANN v. S. A. GREER.

### Decided November 14, 1903.

School Land—Actual Settlement—Absence.

Defendant settled upon State school land, but before applying to purchase it removed therefrom with his family, leaving some household effects and stock. on the place. For more than six months thereafter he actually resided with his family elsewhere, and was so resident at the date of his application to purchase, but had acquired no home, and had claimed the school land as his home from the time he went upon it. Held, that he was not an actual settler within the terms of the statute relating to the sale of school land, which requires actual occupancy by the settler, save only a permitted absence, not exceeding six months in any one year, for certain named purposes. Sayles' Civ. Stats., arts. 4218j, 4218l.

Appeal from the District Court of Floyd. Tried below before Hon. J. M. Morgan.

Action in trespass to try title by S. A. Greer against J. F. Mann for the recovery of school land. From a judgment in favor of plaintiff the defendant appeals.

*J. B. Bartley* and *B. E. Green,* for appellant.

*J. W. Pruitt* and *Kinder & Dalton,* for appellee.

SPEER, ASSOCIATE JUSTICE.—By agreement of the parties the sole question presented for our decision is whether or not there is sufficient evidence in the record to sustain the trial court's finding that appellant was not an actual settler in good faith, for the purpose of a home, on the northwest quarter of the northwest quarter of section 14, block G, in Floyd County, at the time (October 16, 1899) he made his application to purchase the land in controversy. We give below the evidence in full.

S. A. Greer, plaintiff, testified as follows: "I was living on north half of section No. 90 at the time I made application to purchase the land in controversy, and have lived there ever since, with my family. I knew the place that defendant claimed as his home from May, 1899, to the present time. Mann's family left the place in March, 1899, and were not back there until in the year 1901. The defendant himself was not on the land during this time, nor any of his family. At the time, in October, 1899, when defendant filed on the land, he was not on the land, nor was his family."

J. C. Cooper testified for the plaintiff as follows: "I remember the time when defendant's family sold out and left the plains. I was at defendant's place the day before they left, and was there a day or so after they were gone. They took their wagons and teams and all their household goods. This was in March, 1899. When they left, defendant himself was not on the land, and the last time I saw him on the land was in 1897. I did not see the defendant or any of his family on the

land again until August, 1901.   During this time no one was living on
the land except Elmer Reeves, who lived on the place during a part of
the year 1899 and 1900.   I knew the place in October, 1899, and was
there frequently during that month, and defendant nor his family was
living there during that month."

J. F. Mann, defendant, testified as follows:  "I first came to the
plains in the year 1891, and settled upon the section in controversy, on
the northwest quarter of the northwest quarter of same, which I still
claim as my home now, and have had no other, and never at any time
claimed any other place as my home.   The last time, before filing on the
land in controversy, I was on the land, was August, 1897, but my family
continued at all times to reside on said forty acres, until March, 1899.
At this time I was working in the shops at Thurber Junction, in Palo
Pinto County, when my wife came to me about the 1st of April, 1899.
None of us were on the forty acres home place nor on the land in con-
troversy after April, 1899, till August, 1901.   We were not on there
when I filed on the land in controversy, but was at Thurber Junction.
My forty acres was never at no time clear of part of my household ef-
fects, farming implements and horses and cattle part of the time.
There was no crop raised on the place until the year 1902, when I had
about twelve acres of sod broken.   We left in the house a stove, cooking
utensils, bedstead and bedding, wearing apparel, the house cat and
chickens.   My wife took what was necessary for us to use in camp.   We
lived in a rented house while away at Thurber Junction.   I have ren-
dered and paid my poll tax in Floyd County every year since 1891.   I
never at any time paid a poll tax, nor did I vote in any county than in
Floyd County.   I never at no time abandoned my home, nor have I
claimed to have abandoned it, and never had any thought of doing so.
I have never owned any other home.   I made application for the land in
controversy, for a home addition.   I was not at home when my wife left
there in March, 1899.   We left the place and things in charge of Elmer
Reeves, who stayed on the place for us till the spring of 1900.   I was
away from my home at work to earn money to live on and improve the
place.   All the money I made, after paying living expenses, went on the
land, except what I have paid to my lawyers.   I was paid wages by the
month, and intended to return home when out of a job."

John Cravette testified for defendant as follows:  "I was about the
Mann place while Elmer Reeves was there for Mann.   I saw a stove, bed-
stead and bedding, farming implements, wagon and two horses.   They
were the effects of Mann, as I understood it from Elmer Reeves.   When
Reeves left there he left these effects.   I do not remember the dates I saw
these effects there."

The judgment of the court finds ample support in the testimony.   Ac-
tual settlers only are authorized to become the owners of additional lands
under our school land laws.   Sayles' Civ. Stats., art. 4218f.   An actual
settler is one whose occupancy is actual rather than constructive.   Baker
v. Millman, 77 Texas, 46, 13 S. W. Rep., 618; Schwarz v. McCall, 94

Texas, 10, 57 S. W. Rep., 31. So that if, as found by the trial court, appellant was not an actual settler upon his home tract at the time of his application to purchase as additional land the tract in controversy, then he would not be eligible to make such purchase, notwithstanding his absence may not have amounted to an abandonment of his home tract, if the question of abandonment were to be determined by our homestead exemption laws. For one may have a homestead upon land under our exemption laws which may be actually occupied by a tenant, or not occupied at all. But we apprehend that the rule applicable to the homestead exemption generally, is not to govern in cases like this, for the Legislature has seen proper to require actual occupancy by the settler save only a permitted absence, not exceeding six months in any one year, for certain named purposes, thus, impliedly at least, forbidding any other absence as being inconsistent with the character of settlement required. Sayles' Civ. Stats., arts. 4218j, 4218l; Singleton v. Wright, 54 S. W. Rep., 249; Willoughby v. Townsend, 93 Texas, 80, 51 S. W. Rep., 335. It is undisputed that appellant's actual residence was at Thurber Junction, in Palo Pinto County, for more than six months next preceding his application to purchase the additional lands. This may not be inconsistent with his right to claim a homestead elsewhere, but it is inconsistent with his claim that he was an actual settler at the time on his home section in Floyd County.

Judgment affirmed.

*Affirmed.*